AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Southern District of Texas

United States Courts
Southern District of Texas
F I L E D

FEB – 7 2020

David J. Bradley, Clerk of Court

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>26848 Mystic Castle Lane, Humble, Texas 77339 | )<br>)<br>)<br>)<br>)<br>) |

Case No.  H 2 0 - 0 2 5 4 M

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

ATTACHMENT A

located in the _____Southern_____ District of _____Texas_____ , there is now concealed *(identify the person or describe the property to be seized):*

ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 846 | Conspiracy to Possess with Intent to distribute Cocaine HCL |
| 18 USC 1956 | Conspiracy to launder monetary instruments |

The application is based on these facts:

ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jason Havemann, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Feb 7, 2020

*Judge's signature*

City and state:  Houston, Texas

Christina A. Bryan, U.S. Magistrate Judge
*Printed name and title*

ATTACHMENT "A"

### 26848 Mystic Castle Lane, Humble, Texas 77339

The Target Residence is a two story single family residence with brick siding.  The Target Residence's address is on the curb directly in front of the house.



ATTACHMENT "B"

Based on the facts as outlined in the attached affidavit, your affiant is seeking the requested warrant to seize the following items which are secured within their residences for easy access; or in nearby structures and/or vehicles located on the premises of the residence in which traffickers can retain these records for long periods of time:

a. U.S. Currency

b. Illegal Narcotics

c. Firearms, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons

d. Jewelry, vehicles and other assets

e. Money counters, denomination bands, ledgers and adding machines

f. Books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the importation, transportation, ordering, sale, purchase, and distribution of controlled substance; bank records, corporation records, financial statements, loan agreements, partnership agreements, address books, electronic organizers, diaries, planners, notebooks, photographs, and other documents. Brokerage accounts, and records of offsite locations to store records including safety deposit box keys, records, and receipts, rental agreements for storage facilities, records of mail and answering services including telephone pagers


The term "records" includes all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including computers, DVR's, NVR's and any other electrical, electronic, or magnetic form, such as any information on an electronic or magnetic storage device, including floppy diskettes, hard disks, ZIP disks, CD-ROM's, optical discs, backup tapes, printer buffers, smart cards, memory calculators, pagers, personal digital assistants, such as "Palm Pilots" computers, as well as readouts or printouts from any magnetic storage device, any handmade form, any mechanical form, and any photographic form;

<u>AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS</u>

SOUTHERN DISTRICT OF TEXAS

I, Jason Havemann, a Special Agent with the Drug Enforcement Administration (DEA), being duly sworn, hereby depose and say:

A.    <u>INTRODUCTION</u>

1.     I am a Special Agent with Drug Enforcement Administration (hereinafter "DEA"). I have been a sworn law enforcement officer with DEA since 2008. Presently, I am assigned to the DEA Houston Division Office in Houston, Texas. Your affiant received 19 weeks of training in drug investigations and related legal matters at the DEA Training Academy in Quantico, Virginia. I have gained this knowledge as a result of professional training and experience.

2.     I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have participated in investigations of drug trafficking, money laundering, complex conspiracies and, among other things, have conducted or participated in surveillances, the execution of search warrants, debriefings of informants and reviews of taped conversations. Through my training, education and experience, I have become familiar with the manner in which drug traffickers and money launderers conduct their operations, including but not limited to, their methods of importing and distributing controlled substances, use of telecommunication devices to include cellular telephones and digital display paging devices, use of counter surveillance techniques, and use of numerical codes and coded and/or cryptic language, words, and references to conduct their transactions.

SW Affidavit for 26848 Mystic Castle Lane, Humble, TX 77339           Page **1** of **15**

3.      In addition, your Affiant has experience in the execution of narcotics related search warrants, debriefing of defendants, participating witnesses, informants, and other persons who have personal knowledge of transporting, smuggling, distributing, and concealing unlawful activities.   In addition, your Affiant has conducted follow-up investigations concerning the concealment of drug produced assets, money, bank records, etc., and the identification of co-conspirators through the use of ledgers, telephone bills and records, photographs and bank checks, as related to drug trafficking.

4.      The information enumerated in the paragraphs below, furnished in support of this affidavit, is either personally known by me, or has been relayed to me by other federal agents or officers, state and local sworn law enforcement officers, or reliable witnesses and or sources of information. Because this affidavit is being submitted for the limited purpose of establishing probable cause for a search warrant, the affidavit may not contain every fact known to me during the course of the investigation.

## B.  TARGET RESIDENCE

5.      This affidavit is submitted in support of the Government's application for the issuance of warrants to search the following Target Premises:

(a)      **26848 Mystic Castle Lane, Humble, Texas 77339**

**26848 Mystic Castle Lane, Humble, Texas 77339** is a single family residence.   Based on the investigation to date, this residence, and others, have been identified to be either owned or used by **Tomas CALVILLO** (hereinafter referred to as **CALVILLO**) as cocaine and/or drug proceed stash houses.

6.      Based on your Affiant's experience, training, statements made by other law enforcement

agents pertaining to this investigation and the following observations and facts, your Affiant believes that at this time, at the premises listed in Attachment "A," there is being concealed certain property which constitutes evidence of violations of 21 U.S.C. § 846; and Title 18 U.S.C. § 1956. Your Affiant believes that there is probable cause to believe that within the premises of the residence located at 26848 Mystic Castle Lane, Humble, Texas 77339, **(the Target Residence)** which is a two story family residence, those items described in Attachment "B" are concealed.

C.    <u>BASIS FOR FACTS IN THIS AFFIDAVIT</u>

7.    I make this affidavit, in part, on personal knowledge derived from my participation in the Investigation and, in part, upon information and belief. The sources of my information and belief are:

    a. Oral and written reports about the Investigation and other investigations which I have received from participating agencies;

    b. Oral and written reports about the Investigation based on information from sources of information, which have been received by me, and/or other law enforcement officers;

    c. Physical surveillance conducted by me and/or other law enforcement officers which has been reported to me either directly or indirectly;

    d. Physical evidence seized by me and/or other participating agencies during the Investigation

    e. Information obtained from local, state and federal government agencies, and from public utility providers;

    f. Independent investigation by other participating agencies;

g. Recorded conversations between the targets of investigation and their associates.

### D.   CASE BACKGROUND

8.   Since around June 2018, DEA Agents in Houston, Texas have been investigating the drug trafficking activities of **CALVILLO**.  This investigation has identified members of the drug trafficking organization located in and around Houston, Texas as well as various cities throughout the United States.  In particular, this investigation has uncovered an extensive and elaborate narcotics importation and monetary exportation method utilizing vehicles containing hidden compartments as well as commercial airlines. This investigation has also led to multiple arrests, seizures of narcotics, and narcotics proceeds. More specifically, this investigation has identified the **Target Residence** as a location used by **CALVILLO,** and others**,** to stash, organize, count, package and conceal narcotics.  **CALVILLO** has a criminal history of drug trafficking that dates back to August 2010, during which **CALVILLO** was arrested in Jefferson County Texas for Felony possession.  **CALVILLO** served four years probation.  In 2012, **CALVILLO** was arrested in Houston, Texas for Felony possession of drugs and received four years probation.

9.   On November 16, 2018, Lynn N. Hughes, United States District Judge, Southern District of Texas, signed an order authorizing the judicial interception of cellular telephone 346-308-0780 which was being utilized by **CALVILLO.**

10.   On December 8, 2018, agents intercepted several telephone conversations between **CALVILLO** who was utilizing cellular telephone 346-308-0780 and **Fernando SALCIDO,** hereafter **SALCIDO** who was utilizing cellular telephone 832-206-0704. During these judicially authorized intercepts, it was believed that **SALCIDO** was planning to drive to the **Target Residence** to take two (2) kilograms of cocaine to from **CALVILLO,** which **CALVILLO** was

unable to sell. Affiant observed **SALCIDO** arrive at the Target Residence, driving a Ford F150, which was also registered to **Fernando SALCIDO**. **SALCIDO** entered the Target Residence and exited approximately 30 minutes later, **SALCIDO** exited the Target Residence carrying a bag and placed it inside the Ford F150 before departing. Based on telephone calls between **CALVILLO** and **SALCIDO**, as well as the following call between **CALVILLO** and **Kendall THOMPSON**, Affiant believes the bag contained two kilograms of cocaine. At approximately the same time, and during the Judicial wiretap intercept, **CALVILLO** received a telephone call from **Kendall THOMPSON**. **Kendall THOMPSON** asked **CALVILLO** for two of the "girls", a code-word for cocaine. **CALVILLO** immediately called **SALCIDO** and told him to come back to his house because **THOMPSON** had just called asking for the cocaine. Affiant observed **SALCIDO** return to the Target Residence in the Ford F-150.

11.    On December 14, 2018, during the wiretap of **CALVILLO's** telephone, **CALVILLO**, using telephone number 346-308-0780 called **SALCIDO**, who was using telephone number 346-240-8587. During the call, **CALVILLO** agreed to meet with **SALCIDO** at a restaurant called the "Jalapeño". **CALVILLO** stated his "boy" wanted "three of those", which Affiant believes was a reference to three kilograms of cocaine. Affiant believes **CALVILLO** planned to obtain kilograms of cocaine from **SALCIDO** at the restaurant. Agents established surveillance near the "Jalapeño" restaurant and observed **CALVILLO** arrive at the restaurant in his Dodge Ram truck. Agents also observed **CALVILLO** park his truck next to **SALCIDO's** Buick Enclave SUV. Agents were unable to observe a meeting due to the layout of the parking lot and an obscured view. A few minutes later, the two vehicles left at approximately the same time. Later that same afternoon, Affiant observed **CALVILLO** drive to Kendall **THOMPSON's** apartment complex

SW Affidavit for 26848 Mystic Castle Lane, Humble, TX 77339                    Page **5** of **15**

located on Barker Cypress in Houston, Texas.  After approximately 15 minutes, **CALVILLO** exited **THOMPSON's** apartment and was observed with a black backpack slung over his shoulder.  Shortly after departing **THOMPSON's** apartment, **CALVILLO** called Christopher **CASTILLO**, hereafter **CASTILLO**, who was using telephone number 832-212-7644. **CALVILLO** told **CASTILLO** he was on his way to the "house" and he would "leave it on top" for him.  Affiant believes **CALVILLO** was referring to leaving money from the sale of drugs to **THOMPSON** at the "house".  **CASTILLO** told **CALVILLO** to go all the way home, believed to be a reference to going to the **Target Residence**.

12.     As discussed, this investigation has now identified the **Target Residence** as a residence utilized by **CALVILLO**, and probable stash location for drugs and illicit proceeds.  On January 8, 2020, **CALVILLO** was indicted in the Eastern District of Texas for violation of Title 21, United States Code Section 846 (Conspiracy to possess with intent to distribute and distribution of controlled substances) and Title 18, United States Code section 1956(h) (Conspiracy to commit money laundering).  The arrest warrant is expected to be executed on February 11, 2020.

E. <u>FINANCIAL INVESTIGATION</u>

13.     During the course of this investigation, agents have identified the **Target Residence** as a location in which **CALVILLO** resides.  On numerous occasions during the investigation, Affiant observed **CALVILLO** departing from the **Target Residence** while driving a Dodge Ram truck, registered to **Tomas CALVILLO** and a 2015 GMC Yukon SUV, registered to George Flores and Jesse Flores at 11422 Sleepy Hollow Trail, Houston, Texas.  Affiant knows drug traffickers commonly register their vehicles in other person's names as a means to conceal their assets and identity.  Drug traffickers are also known to purchase vehicles in other person's names as a means

to disguise their unexplainable/undocumented wealth which is a result of drug trafficking. During the wiretap of **CALVILLO's** telephone, **CALVILLO** also spoke about an old Chevrolet truck he was having restored. **CALVILLO** mentioned spending several thousand dollars restoring the vehicle. The Chevrolet truck is believed to be stored in the garage of the **Target Residence**.

14.      During this investigation, Investigators identified the **Target Residence** as a property owned by **CALVILLO**. According to a publicly available records search of the Montgomery County Appraisal District, the Target Residence was purchased by **CALVILLO** in December 2016. In 2019, the **Target Residence** assessed value was $215,080.

15.      A public records query of the Harris County Appraisal District website revealed that in September 2018, **CALVILLO** purchased 10607 Bainbridge Street, Houston, Texas. The property value in 2019 was assessed at $114,425.

16.      According to the Texas Workforce Commission, **CALVILLO** has no records of employment. Additionally, at no time during the investigation did Agents or Investigators observe **CALVILLO** travel to a place of employment. **CALVILLO** has no known legitimate source of income.

17.      Records reveal that **CALVILLO** has purchased two real estate properties after his first drug trafficking arrest. Coupled with the fact that **CALVILLO** does not have any verifiable employment or legitimate source of income, Affiant believes **CALVILLO** used drug proceeds to pay for and purchase the **Target Residence** and 10607 Bainbridge Street, Houston, Texas.

18.      Affiant believes the search of the **Target Residence** has a high probability of containing documents related to the sale/purchase of the **Target Residence** and other assets owned by **CALVILLO**. Affiant also believes the closing documents for the purchase of the Target

Residence and 10607 Bainbridge Street, Houston, Texas, which are likely to be stored at the Target Residence, will reveal the source of funds used to purchase the real estate properties. Affiant believes the financial documents will prove **CALVILLO's** drug money laundering methods employed by using the drug proceeds to purchase the real estate properties.

F. TRAINING, EXPERIENCE AND KNOWLEDGE OF NARCOTICS INVESTIGATIONS

19.    I have specialized training and experience in narcotics smuggling and distribution investigations. I have participated in numerous narcotics investigations as a case agent and in a subsidiary role.   I have debriefed numerous defendants, informants, and witnesses who had personal knowledge regarding major narcotics trafficking organizations.  I have participated in many narcotics trafficking-related surveillance operations, and I have participated in many investigations involving court-authorized interceptions of wire communications.  I am familiar with narcotics traffickers' methods of operation in the distribution, storage, and transportation of narcotics, the collection of money which represents the proceeds of narcotics trafficking, and the laundering of proceeds derived from narcotics trafficking.  I am aware that narcotics traffickers often communicate with their associates and/or customers via cellular telephones and other electronic means.  I am also aware narcotics traffickers often change or switch cellular telephones and other communication devices to maintain the covertness of their activities.  I have received training specifically with respect to investigations involving methamphetamine and in complex conspiracies utilizing electronic surveillance.  Based on my training and experience, as outlined

above, and the facts and circumstances of this investigation, as well as consultations with experienced narcotics investigators in the DEA and other agencies, I know that:

a.      Persons involved in the illegal distribution of controlled substances frequently engage in transactions involving large quantities of narcotics often receive and/or distribute quantities of narcotics on a consignment basis, often referred to as being "fronted". These narcotics transactions often involve large amounts of controlled substances and/or U.S. Currency and often require the keeping of records which detail amounts of narcotics obtained and distributed, names, locations, and dates of distribution, and amounts of monies received and/or disbursed as payment for narcotics and other illegal services. Persons involved in the trafficking of controlled substances frequently maintain records of these illegal activities in the form of papers, books, notes, ledgers, and other documents.  Further, persons involved in the illegal importation, storage, transportation, and distribution of controlled substances frequently maintain these records in residences owned by them, or over which they exercise dominion and control.  As such, it is common for individuals involved in large scale narcotics trafficking to maintain books, records, receipts, notes journals, ledgers and/or other documents relating to the transportation and distribution of narcotics and narcotics proceeds at their residence.  The term "records" includes all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including computers and any other electrical, electronic, or magnetic form, such as any information on an electronic or magnetic storage device, including floppy diskettes, hard disks, ZIP disks, CD-ROM's, optical discs, backup tapes, printer buffers, smart cards, memory calculators, pagers, personal digital assistants, such as "Palm Pilots" computers, as well as readouts or printouts from

any magnetic storage device, any handmade form, any mechanical form, and any photographic form;

   b.      The trafficking of controlled substances generates large quantities of U. S. currency which represent payment for quantities of narcotics, payment for the transportation and storage of narcotics, or profits derived from the sale of narcotics.  The processing and storage of these large amounts of currency often requires the use of various items, such as money counters, denomination bands, ledgers and adding machines.  I further know that persons involved in the trafficking of controlled substances frequently convert this U. S. Currency into other items of value including, but not limited to, jewelry, automobiles, financial instruments and other items of value. I know that these sums of U.S. currency, or other items of value, as well as the items necessary to process and store this U.S. currency, are frequently stored and/or secreted in residences and other properties under the dominion and control of those involved in the trafficking of narcotics;

   c.      Persons involved in the illegal distribution of controlled substances and the laundering of the proceeds of these illegal activities, are frequently joined, aided, abetted, and assisted by co-conspirators, associates, and subordinates in their illegal enterprises; and frequently maintain names, addresses, phone numbers, and other information on these persons in address books, electronic organizers, diaries, planners, notebooks, photographs, and other documents. Further, persons involved in the illegal distribution of narcotics, and the associated laundering of illicit proceeds, frequently maintain these books and records in places readily accessible to them, and under their dominion and control;

   d.      Persons involved in the illegal distribution of controlled substances frequently use telephones, digital display paging devices, and cellular telephones to conduct narcotics

transactions.  These persons often attempt to obtain these communication devices through the use of fraudulent or fictitious names, or through the use of nominee subscribers.   I further know that evidence of these transactions and the identities of co-conspirators and others involved in narcotics trafficking can be obtained from telephone, pager, and cellular telephone bills and statements; as well as from the telephones, cellular telephones, pagers, and associated caller identification devices or answering machines.  These bills and statements, as well as the communications devices, are often stored and maintained in residences and other areas under the dominion and control of those involved in narcotics trafficking;

      e.     Persons involved in the illegal distribution of controlled substances and the laundering of the proceeds of their illegal activities often attempt to conceal or disguise the source, nature, and location of illegal proceeds by utilizing legitimate banking and other financial institutions to conceal or disguise the nature of the proceeds of illegal activities.  This is often accomplished through the use of safe deposit boxes, financial accounts, and financial instruments obtained in false or fictitious names, or through the use of nominee account and/or safe deposit box holders; or by commingling illegal funds with legitimate funds and earnings in an effort to legitimize the source of these illegal funds or disguise the existence of these illegal funds.  I further know that bank accounts, certificates of deposit, stocks, mutual funds, and safe deposit boxes often contain monies, in whole or in part, which represent the proceeds of illegal activities.   The existence of these financial accounts, financial instruments, and safe deposit boxes generate records produced by the banking and financial institutions.  These records are often maintained in areas which are readily accessible to, and under the dominion and control of those involved in illegal activities;

f.      Criminal organizations involved in the large-scale trafficking of controlled substances frequently attempt to invest their illegal proceeds into legitimate businesses as a means of laundering their drug profits. These organizations often attempt to acquire interest or control of businesses which conducts a large portion of their business in the form of cash and which makes the commingling of drug proceeds with legitimate income an easier task. The acquisition of these legitimate business interests with drug proceeds often creates documentary evidence in the form of bank records, corporation records, financial statements, loan agreements, partnership agreements, and other documentary evidence which is frequently stored or maintained in areas under the dominion and control of the heads of the criminal organization;

g.      Persons involved in the illegal distribution of controlled substances, often have in their possession or control, firearms, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons that are used to protect and secure their person.

## G.    SEARCH WARRANT APPLICATION

20.    As outlined above, I know that individuals engaged in the trafficking of large quantities of narcotics generally operate on a cash basis.

21.    As outlined above, I know that individuals engaged in the trafficking of large quantities of narcotics attain large sums of currency and attempt to conceal the illegal proceeds. Based on information derived during the investigation there is probable cause to believe that upon search of the **Target Residence**, agents will locate evidence including, but not limited to, narcotics- namely cocaine, bulk currency, safe deposit records, safe deposit keys, bank records, books, notes, ledgers, jewelry, vehicles and other assets or financial records related thereto.

22.    Based upon the foregoing, I respectfully submit that there is probable cause to believe that

the evidence described in Attachment B will be found in the **Target Residence**, which constitute

evidence of the commission of, or are designed or intended as a means of the violation of the

federal narcotics laws, including but not limited to the conspiracy to possess with intent to

distribute a controlled substance, in violation of Title 21, United States Code, Sections 846, and

the laundering of monetary instruments and relating to engaging in monetary transactions

involving property derived from specified unlawful activities, and conspiracy to do the same, in

violation of Title 18, United States Code, Section 1956.

23.    For the reasons set forth above, I respectfully request that the Court issue a search warrant

for the **Target Residence** for the items set forth in Attachment B.


Jason Havemann, Special Agent
Drug Enforcement Administration


SUBSCRIBED AND SWORN BEFORE ME THIS _____ DAY OF February, 2020.


Christina A. Bryan
UNITED STATES MAGISTRATE JUDGE


SW Affidavit for 26848 Mystic Castle Lane, Humble, TX 77339            Page **13** of **15**